UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

LAL BHATIA,

Plaintiff,

vs.

MANMOHAN K. WIG, WIG PROPERTIES, LLC , AND DOES 1-50,

Defendants.

Case No: C 10-0072 SBA

**ORDER: (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; (2) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION; AND (3) DENYING DEFENDANT'S MOTION FOR AN ORDER FINDING PLAINTIFF A VEXATIOUS LITIGANT**

Dkt. 16, 41, 42, 54, 58,

Plaintiff Lal Bhatia ("Bhatia"), a federal prisoner, brings the instant pro se action against Manmohan K. Wig ("Wig") and Wig Properties, LLC ("Wig Properties"), alleging federal claims for violation of the Racketeer Influenced Corrupt and Organization Act ("RICO"), 18 U.S.C. § 1962(c), conspiracy to violate RICO, 18 U.S.C. § 1962(d), and state law causes of action for fraud, intentional interference with prospective economic advantage and abuse of process. The parties are presently before the Court on Defendants' Motion for Summary Judgment (Dkt. 41), Plaintiff's Motion for Partial Summary Adjudication (Dkt. 16), and Defendant's Motion for an Order Finding Plaintiff a Vexatious Litigant (Dkt. 42). In connection with the Defendants' summary judgment motion, Bhatia has filed a request for leave to file a second supplemental declaration (Dkt. 58) and motion for leave to file a surreply (Dkt. 54).

Having read and considered the papers submitted and being fully informed, the Court: GRANTS Bhatia's request for leave to file a second supplemental declaration and motion for leave to file a surreply; DENIES his motion for partial summary adjudication; GRANTS Defendants' motion for summary judgment; and DENIES Defendants' motion for an order declaring Bhatia a vexatious litigant. The Court adjudicates the instant motions without oral argument. See Fed.R.Civ.P 78(b).

## I. BACKGROUND

### A. BHATIA'S PRIOR LITIGATION WITH WIG

Defendant Wig is the managing member of Wig Properties, a Washington limited liability company which he owns with his wife, Priscilla Wig. Wig Decl. ¶ 1. Bhatia is related to Wig through marriage. Id. ¶ 2. In October 1998, Bhatia, representing himself as an employee of Allied Boston International ("ABI"), contacted Wig claiming that ABI needed a real estate broker to assist them in locating new office space in Bellvue, Washington. Id. Ex. A at 2. During their conversation, Wig informed Bhatia that he was involved in developing two large real estate projects: A $15 million project known as Lakewood Pavilion; and a $20 million project known as Cooper Point Pavilion. Id. Bhatia represented to Wig that he was in the business of making large real estate loans at favorable interest rates, and suggested that Wig submit applications to ABI for financing. Id. On November 30, 1998, Wig submitted loan applications to Bhatia, along with payments totaling $120,868, which Bhatia claimed were for professional and commercial fees. Id. Wig informed Bhatia that it was imperative that the financing close by July 1999, and that he would face significant financial repercussions if the loans failed to fund by that date. Id. at 3.

In December 1998, Bhatia informed Wig that ABI could provide funding of up to $500 million for future projects on the same favorable terms that he had quoted for the Lakewood Pavilion and Cooper Point Pavilion projects. Id. To begin the financing process on such funding, Bhatia told Wig that he first would need to pay an additional $66,000 in professional fees and $176,000 in commercial report fees. Id. Wig paid these amounts on

December 30, 1998. Id. Subsequently, Bhatia requested payment of additional fees in connection with the proposed financing, which Wig paid. Id. By February 8, 1999, Wig had paid Bhatia a total of $800,000 in cash. Id. Wig also executed a promissory note in the amount of $800,000, which represented the balance of the loan fee requested by Bhatia. Id.

In June 1999, around the same time that Wig was in the process of obtaining financing for his real estate projects, Bhatia presented Wig with an investment opportunity in ABE Technologies, Inc. ("ABE"). Id. Ex. B at 2. Bhatia claimed that he was the president and shareholder of ABE, and that he was looking to secure $300,000 in cash, which would be repaid at a substantial profit in a relatively short period of time. Bhatia claimed that ABE had developed patented software required for the internet. Based upon Bhatia's representations, Wig paid Bhatia $300,000 for 300 shares of ABE preferred stock. Bhatia also induced other family members to invest in ABE. In fact, Bhatia's representations were false. Upon learning that he had been defrauded by Bhatia, Wig demanded the return of his $300,000 investment. Bhatia refused.

On November 30, 2001, Wig filed a civil complaint against Bhatia and ABI in the Superior Court of Washington, King County. Gossler Decl. Ex. B. On December 19, 2001, Wig sued Bhatia and ABE in the same court. Id. Ex. L. In September 2002, Wig filed a series of successful, dispositive motions in both the ABI and ABE lawsuits and obtained final judgments in each matter. Gossler Decl. ¶¶ 2-3 & Exs. F, H, P, I, R.[1] Bhatia appealed the adverse judgments to the Washington State Court of Appeals. Id. ¶ 4. In December 2003, however, Bhatia and Wig, through their respective counsel, reached a settlement of all issues between them, including the judgment and the appeals. The parties memorialized their agreement in a Settlement Agreement and Mutual Release, dated December 17, 2003. Gossler Decl. ¶ 5 & Ex. U. The Settlement Agreement included a full release of claims, whether known or unknown, including all pending lawsuits and appeals

---

[1] Each judgment includes the following handwritten modification to the proposed order: "Further, this relief is warranted by the defendant's repeated and unjustified failure to obey this court's discovery orders and this court has exhausted less severe remedies to obtain compliance." Id. Ex. I, R.

involving Wig, "from the beginning of time to the date of the mutual execution of this Agreement." Id. § 4.2.

### B. CRIMINAL PROSECUTIONS BROUGHT AGAINST BHATIA

#### 1. CR 04-40071 CW

On April 15, 2004, a federal grand jury returned an indictment charging Bhatia with eight counts of mail fraud in violation of 18 U.S.C. § 1341 and one count of money laundering in violation of 18 U.S.C. § 1957(a). See United States v. Lal Bhatia, No. CR 04-40071 CW (N.D. Cal., filed April 15, 2004); Gossler Decl. Ex. V. On September 23, 2004, the grand jury returned a superseding indictment charging him with nine counts of mail fraud and eighteen counts of money laundering. Gossler Decl. Ex. W. The indictment alleged that Bhatia had engaged in a scheme to defraud by making false representations to potential investors in his technology business, ABE. Id. The case was assigned to the Honorable Claudia Wilken of this Court.

A jury trial was held on February 13 through 28, 2006. On February 28, 2006, the jury returned a verdict of guilty on all counts charged in the superseding indictment. Id. Ex. Y. On October 23, 2006, Judge Wilken sentenced Bhatia to a term of four years in custody as to each count, to run concurrently. Id. Ex. Z. On December 14, 2007, the Ninth Circuit affirmed the judgment. United States v. Bhatia, 2007 WL 4385770 (9th Cir. Dec. 14, 2007). On July 1, 2008, Bhatia filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. Judge Wilken denied the motion on March 10, 2009. Bhatia's appeal from that ruling remains pending.[2]

#### 2. CR 05-00334 SBA

Bhatia presently is a defendant in a criminal matter currently pending before this Court. On April 22, 2005, the Government filed a criminal complaint against Bhatia and three other defendants, charging them with wire fraud and money laundering. United States v. Lal Bhatia, et al., No. CR 05-00334 SBA. These charges arise from their alleged

[2] The Court takes judicial notice of the Dkt. in CR 04-40071 CW and CR 05-00334 SBA.

involvement in a real estate financing scam in which they induced the owners and officers of Carlton Orlando LLC and Inderra Houston to pay advance fees to secure loans for their respective construction projects when defendants, in fact, had no intention or ability to obtain such loans. As in the case before Judge Wilken, Bhatia has filed a litany of pretrial motions, including various motions based on accusations that Assistant United States Attorney Stephen Corrigan and Federal Bureau of Investigations Agent Janet Berry, both of whom have been assigned to Bhatia's cases, fabricated evidence and engaged in other "falsehoods." The action was stayed for a significant period of time as a result of an unsuccessful interlocutory appeal filed by Bhatia. United States v. Bhatia, 545 F.3d 757 (9th Cir. 2008).

On September 5, 2008, Bhatia filed a civil action in the Southern District of Texas, seeking to enjoin the United States from prosecuting him in CR 05-00334. Lal Bhatia v. United States, et al., No. C 08-4208 SBA. The case was transferred to this District and assigned to Judge Wilken, but was later was reassigned to this Court. In his complaint, Bhatia accused AUSA Corrigan and Agent Berry of concealing and misrepresenting evidence in the course of prosecuting him. Bhatia also sought to have AUSA Corrigan disciplined for his alleged misconduct. The Court dismissed the complaint on November 6, 2008. The Ninth Circuit affirmed the dismissal on April 20, 2010. Bhatia v. United States, No. 08-17784, 2010 WL 1552840 (9th Cir. April 20, 2010). The criminal case remains pending before the Court.

### C. THE INSTANT ACTION

On January 6, 2010, Bhatia filed a 157-page Complaint, consisting of 627 paragraphs, against Wig and Wig Properties. He alleges five claims for relief, styled as follows: (1) Fraud and Deceit, Compl. ¶¶ 319-339; (2) Racketeering in Violation of 18 U.S.C. §1962, id. ¶¶ 341-590; (3) Conspiracy to Violate Substantive Provisions of Racketeer Influenced and Corrupt Organizations Act of 1970, id. ¶¶ 591-99; (4) Intentional Interference with Prospective Economic Advantage, id. ¶¶ 600-610; and (5) Abuse of Process, id. ¶¶ 611-624.

The gravamen of Bhatia's lengthy and turgid Complaint is that *he* is the victim of Wig's fraudulent scheme—and not vice-versa. Bhatia contends that he formed ABI *at Wig's direction* for the purpose of distributing $500 million in loan commitment proceeds originating from a Swiss company known as Allied Group. Bhatia claims that Wig controlled Allied Group and used ABI to falsely obtain loan commitment fees. With regard to ABE, Bhatia claims that it was Wig who instructed him to form ABE, and represented that Allied Group would support the new venture. Wig purportedly told Bhatia that he had arranged for the purchase of ABE by a third party. In reliance on those representations, Bhatia claims that he solicited investments totaling $1.2 million from his aunts, uncles and cousins. The purchase did not transpire, thus allegedly leaving Bhatia with the responsibility of repaying family members their investment.

Each of Bhatia's five claims for relief is grounded on the theory that Wig provided false information to the FBI in order to divert attention away from Allied Group so that the FBI would focus its investigation on Bhatia and his entities. As a result of such alleged misconduct, AUSA Corrigan and Agent Berry "were convinced to corruptly, knowingly and willfully fabricate information, to convince the Grand Jury to return an indictment in case no. CR 04-40071-CW . . . charging Plaintiff with mail fraud and money laundering." Pl.'s Opp'n at 1. He further claims that when he refused Wig's demand to plead guilty in that case, Wig "once again convinced Berry and Corrigan to falsify information to convince the Grand Jury to indict Plaintiff in a second case no. CR-05-00334 SBA." Id. at 2. Bhatia and Defendants have separately filed summary judgment motions. In addition, Defendants move to have Bhatia declared a vexatious litigant to prevent him from filing any further civil actions against Defendants absent prior leave of this Court.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating the basis for the motion

and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" Ricci v. DeStefano, -- U.S. --, 129 S.Ct. 2658, 2677 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). An issue of fact is "material" if, under the substantive law of the case, resolution of the factual dispute might affect the outcome of the claim. See Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." Id. at 250. Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted). Only admissible evidence may be considered in ruling on a motion for motion for summary judgment. Fed.R.Civ.P. 56(e); Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

## III. DISCUSSION

### A. RICO

#### 1. Overview

RICO provides for civil liability for "'[a]ny person injured in his business or property by reason of a violation of section 1962.'" Beck v. Prupis, 529 U.S. 494, 495 (2000) (quoting 18 U.S.C. § 1964(c)). Section 1962(c) "makes it 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection

of unlawful debt.'" Id. at 497. To state a civil RICO claim, a plaintiff must allege five elements: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity, establishing that (5) the defendant caused injury to the plaintiff's business or property. See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).

The gist of Bhatia's RICO claim, which spans 96 pages and consists of 149 separate paragraphs, is that Wig and Wig Properties formed an association-in-fact enterprise "for the purpose illegally and fraudulently diverting the FBI and other governmental agencies [sic] investigation of the Allied Group to Plaintiff," thereby "corruptly influencing and attempting to corruptly influence the outcome of federal proceedings." Compl. ¶¶ 341, 344; see also Pl.'s Opp'n at 21-22. According to Bhatia, Wig provided false information to the FBI and other, unspecified law enforcement agencies, which, in turn, led to his indictment and eventual conviction in the criminal case before Judge Wilken, i.e., CR 04-40071 CW. Id. ¶¶ 522-587. Bhatia also claims that when he refused Wig's efforts to compel his confession to the underlying conduct in that case, Wig used his "extremely powerful" contacts within the Department of Justice ("DOJ") to bring a second criminal indictment against him, i.e., CR 05-00334 SBA. Id. ¶ 562. In addition, Wig allegedly convinced a witness from Allied Group, George Loonie, that his testimony was not needed at the trial in CR 04-40071 CW, even though such testimony allegedly would have exculpated him. Id. ¶ 589.[3] As will be set forth below, Bhatia's RICO claim fails, as a matter of law, on multiple levels.

**2. Pattern of Racketeering Activity**

A pattern of racketeering activity "is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise." Odom v. Microsoft Corp., 486 F.3d 541, 549 (9th Cir. 2007) (en banc). There must be "at least two acts of racketeering activity" within ten years of one another in order to constitute a "pattern."

[3] Paragraphs 346 through 384 of the Complaint are identical, except that each is directed to Doe 1 to Doe 39. Likewise, Paragraphs 385 through 395 are directed at Does 39 to Doe 50, and Paragraphs 442 through513 are identical.

18 U.S.C. § 1961(5). "[W]hile two predicate acts are required under the Act, they are not necessarily sufficient." Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004). Rather, "[a] 'pattern' of racketeering activity also requires proof that the racketeering predicates are related *and* 'that they amount to or pose a threat of continued criminal activity.'" Id. (quoting in part H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989)) (emphasis added).

In his opposition brief, Bhatia contends, in an entirely conclusory manner, that he has adequately shown 369 predicate acts of mail and wire fraud. Pl.'s Opp'n at 20; Compl. ¶¶ 395-513. This contention lacks merit. The predicate acts that ostensibly support Bhatia's RICO claim are set forth in paragraphs 397 through 441 of the Complaint, and are identified as various mailings and wire transfers relating to Bhatia's business dealings with Wig from November 30, 1998 through "late April 2004." However, these alleged predicate acts bear no relation to Wig's alleged scheme to influence the FBI or the criminal cases brought against him. See Holmes v. Secs. Investor Protection Corp., 503 U.S. 258, 266-68 & n.12 (1992) (plaintiff must show injury proximately caused by racketeering activity). Rather, the documents and payments that supposedly constitute the racketeering activity relate to Bhatia's fraudulent scheme to collect fees from Wig. None have any bearing upon Wig's allegedly improper conduct in connection with either of the criminal prosecutions filed in this Court.[4]

Moreover, Bhatia's allegations that Wig caused the Grand Jury to return two indictments against him and the United States to prosecute those charges is completely unsubstantiated. As support for his claim that Wig sought to focus the FBI's attention away from himself, Bhatia cites the declaration of George Loonie, who claims to have "assisted" Wig "from time to time" in relation to ABI. Loonie Decl. ¶ 3, Dkt. 46; Pl.'s Opp'n at 3, 21.

---

[4] In essence, Bhatia has used the evidence of *his* fraudulent conduct to show that *he* was the victim of fraud by Wig. Such conduct is not actionable under RICO because it is barred by the statute's four year state of limitations. Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987). Moreover, any claims against Wig based on such conduct are barred by the Settlement Agreement and/or under the doctrine of res judicata, based on the final judgments rendered in the Washington lawsuits.

Loonie states that Wig told him that the FBI was actively investigating ABI, and that "he and his Attorney's [sic] were going to divert the FBI's attention towards [ABI] . . . ." Id. ¶ 20. To the extent that Loonie's statement is offered to prove what Wig allegedly did, such testimony is inadmissible hearsay under Federal Rule of Evidence 802.[5] Even if such evidence were admissible, it is insufficient to demonstrate a genuine issue of material fact. Loonie never states what conduct Wig allegedly engaged in to "divert" the investigation away from him and towards Bhatia. Nor is any evidence proffered to show that Wig used his unidentified "extremely powerful" contacts at the DOJ to ensure the prosecution of Bhatia.

Even if Bhatia had proffered evidence that Wig engaged in racketeering activity in furtherance of his alleged scheme, he has failed to make any showing that the "illegal conduct poses a threat of continued criminal activity." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1535 (9th Cir. 1992). In his Complaint, Bhatia alleges that the specific purpose of the enterprise was to cause "the FBI and other governmental agencies" to bring criminal charges against Bhatia instead of Wig. E.g., Compl. ¶ 341, 344. Since those criminal proceedings were, in fact, commenced by the United States, the purported goal of the enterprise ostensibly was fulfilled. As such, Bhatia cannot show a threat of future racketeering activity, which is fatal to his RICO claim. See Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 366 (9th Cir. 1992) ("Since the only goal of the Greene defendants was the successful prosecution of the Wollersheim state tort suit, there was no threat of activity continuing beyond the conclusion of that suit.") accord Turner, 362 F.3d at 1231 (upholding dismissal of RICO claim where purpose of the enterprise, i.e., the collection of a judgment, was completed).

[5] Bhatia also cites paragraph 291 of his Complaint, see Pl.'s Opp'n at 3, wherein he alleges that "Wig responded that he had to save the Allied Group and himself from being investigated," Compl. ¶ 291. However, what Wig allegedly said does not prove what he actually did.

**3. Heck v. Humphrey**

Alternatively, Bhatia's RICO claim is barred under Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held that, in order to pursue a claim for damages arising out of an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a civil rights plaintiff must prove that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487. "Heck, in other words, says that if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." Smithart v. Towery, 79 F.3d 951, 952 (9th Cir.1996). This rule also applies to the validity of *pending* criminal charges. Harvey v. Waldron, 210 F.3d 1008, 1014 (9th Cir. 2000). Although Heck originally applied to section 1983 claims, subsequent decision have extended Heck to bar other claims, including RICO, where the resolution of such claim necessarily implicates the validity of a criminal conviction. See Swan v. Barbadoro, 520 F.3d 24, 25 (1st Cir. 2008) (upholding dismissal of RICO claims under Heck); Boulware v. Dep't of Ins., 2009 WL 3271060 at *5 (C.D. Cal., Oct. 8, 2009) ("Heck also applies to RICO claims").

Here, Bhatia's RICO claim is predicated upon allegations that Wig provided false information and engaged in fraudulent conducted aimed at securing his allegedly unjustified indictment and conviction in CR 04-40071 CW and the indictment in CR 05-00334 SBA. Thus, to prevail on such a claim, Bhatia necessarily would have to prove that his indictment and conviction in the first case and indictment in the second case were improper. However, Bhatia does not plead nor can he prove that any court has overturned his criminal conviction or otherwise invalidated it. To the contrary, the Ninth Circuit *affirmed* Bhatia's conviction. United States v. Bhatia, 2007 WL 4385770 (9th Cir. Dec. 14,

2007). Nor can he prevail on his civil RICO claim without undermining the propriety of the criminal indictment in CR 05-00334 SBA. See Harvey, 210 F.3d at 1014. Indeed, both this Court and the Ninth Circuit have rejected Bhatia's prior claims regarding the alleged impropriety of that prosecution. See United States v. Bhatia, 545 F.3d 757 (9th Cir. 2008); Bhatia v. United States, No. 08-17784, 2010 WL 1552840 (9th Cir. April 20, 2010). Accordingly, the Court finds, as an alternative matter, that Heck precludes Plaintiff's claim for violation of RICO.

**B. CONSPIRACY TO VIOLATE RICO**

Section 1962(d) provides that: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (b), or (c) of this section." 18 U.S.C. § 1962(d). "To establish a violation of section 1962(d), [plaintiff] must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." Howard v. Am. Online Inc., 208 F.3d 741, 751 (9th Cir. 2000). However, a "[plaintiff] cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." Id. (citing Neibel v. Trans World Assurance Co., 108 F.3d 1123, 1127 (9th Cir. 1997)). Thus, for the reasons articulated above, Defendants are entitled to summary judgment on Bhatia's conspiracy claim, as well.

**C. FRAUD AND DECEIT**

"Under California law, the 'indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'" Vess v.. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Moore v. Brewster, 96 F.3d 1240, 1245 (9th Cir. 1996)). State law fraud claims are subject to a three-year statute of limitations, which accrues upon "the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Code Civ.P. § 338(d). Bhatia argues that "February 22, 2006 commenced the accrual of the limitations period" on his fraud claim, which was the date that Wig allegedly "confessed to the fraud[.]" Pl.'s Opp'n at 8. Accepting Bhatia's date of accrual, he had until February 22, 2009, to file suit. Since

he did not commence this suit until January 6, 2010, his claim is untimely unless the statute is tolled.

Bhatia does not dispute that a three-year limitations period applies to his fraud claim, but instead argues that the statute is subject to a two-year tolling period under California Code of Civil Procedure section 352.1(a), which provides that "[i]f a person entitled to bring an action . . . is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years." Cal.Code Civ.P. § 352.1(a). However, tolling under this provision is inapplicable where, as here, the cause of action accrued prior to incarceration. See Elliott v. City of Union City, 25 F.3d 800, 802 (9th Cir. 1994). By Bhatia's own account, his claim accrued on February 22, 2006; however, he did not commence serving his prison term until March 19, 2008, *after* his claim accrued. Pl.'s Opp'n at 9. Because tolling under section 352.1 is inapplicable under these circumstances, Bhatia's fraud claim is time-barred. See Staves v. City of Los Angeles, 2010 WL 2942769 at *3 (C.D. Cal. June 15, 2010) ("Plaintiff was not incarcerated at the time his claims accrued and therefore the tolling provision of section 352.1 is inapplicable").[6]

[6] Defendants also argue that Bhatia's fraud and other state law claims are barred by the Settlement Agreement and/or under the doctrine of res judicata (based on the judgments rendered in the Washington state court actions). See Defs.' Mot. at 12-21. The record and the law support Defendants' arguments insofar as they pertain to any conduct involving Wig up to December 17, 2003, the date of the Settlement Agreement. Bhatia's assertion that the Settlement Agreement was superseded by a subsequent Purchase and Sale Agreement ("PSA"), dated April 12, 2005, between Wig and a third party is specious. Nothing in that agreement can reasonably be construed as a consent by Wig to excuse Bhatia from the terms of the Settlement Agreement. That notwithstanding, Defendants' alleged conduct regarding the criminal investigation and subsequent proceedings post-dates the Settlement Agreement and are not subject to these particular defenses.

### D. ABUSE OF PROCESS

Bhatia's abuse of process claim is predicated upon Wig's alleged failure to provide testimony that allegedly would have exonerated him of the criminal charges in CR 04-40071 CW. Pl.'s Opp'n at 10. The applicable statute of limitations for an abuse of process claim is one year. Cal.Code Civ.P. § 340(3); Cantu v. Resolution Trust Corp., 4 Cal.App.4th 857, 886-87 (1992). "The limitations period begins to run when the abuse of process occurs." Cantu, 4 Cal.App.4th at 886-87. "If the injury to the plaintiff does not occur at the time the abuse of process occurs, then the limitations period begins to run when the injury occurs." Id.

Bhatia avers that "the statute of limitations began to run when Plaintiff got sentenced on October 23, 2006." Pl.'s Opp'n at 10. He argues that an abuse of process claim is subject to a two-year statute of limitation, and coupled with the the two-year tolling provision contained in section 352.1, he had until October 23, 2010, to file suit. Id. This contention lacks merit. As noted, a cause of action for abuse of process is governed by a one-year, not a two-year, limitations period. Cantu, 4 Cal.App.4th at 886-87. In addition, for the reasons discussed above, Bhatia is not entitled to tolling under section 352.1. As such, accepting Bhatia's assertion that his claim accrued on October 23, 2006, he had until October 23, 2009, to allege a cause of action for abuse of process. Since Bhatia did not commence this lawsuit until January 6, 2010, his claim is untimely.

Bhatia's abuse of process claim also fails on the merits. Under California law, the tort of abuse of process requires misuse of a *judicial* process. Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1037 (9th Cir. 2008). "[T]he essence of the tort 'abuse of process' lies in the misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice." Id. (internal quotations and citation omitted). "To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." Rusheen v. Cohen, 37 Cal.4th 1048, 1057 (2006).

In the instant case, Bhatia predicates his abuse of process claim on allegations that Wig "framed" him allegedly by providing false information to the FBI. Compl. ¶¶ 613-622. The fundamental flaw in this claim is that it does not alleged nor is it based on the misuse of the court or judicial process. Bhatia's vague and unsupported assertions that Wig somehow used his influence to control the FBI's investigation is precisely the type of claim that the Ninth Circuit has held is deficient. See Tucker, 515 F.3d at 1037-38 (allegations regarding the "wrongful use of the criminal and civil justice system" and that defendant used her "influence" to ensure that another party went to jail insufficient to state a claim for abuse of process). Tellingly, Bhatia does not respond to Defendants' substantive attack on this claim.

**E. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

The statute of limitations for the tort of intentional interference with prospective economic advantage is two years. Cal.Code Civ. Proc. section 339(1); Knoell v. Petrovich, 76 Cal.App.4th 164, 168 (1999). Bhatia contends that this claim accrued "when he got sentenced on October 23, 2006." Pl.'s Opp'n at 10. Since more than two years elapsed after that date before Bhatia filed suit, and because tolling under section 352.1 is inapplicable, this claim is time-barred.

**F. DEFENDANTS' MOTION FOR VEXATIOUS LITIGANT ORDER**

Defendants move to have Bhatia declared a vexatious litigant based on his repeated, frivolous filings in this and in other criminal and civil cases in which Bhatia is a party, either as a plaintiff or defendant. (Dkt 42.) In particular, Defendants seek an order stating that "Plaintiff Lal Bhatia shall be prohibited from filing any civil action pro se against Manmohan K. Wig, Wig Properties, LLC, or any employee, officer, or agent of Wig Properties, LLC, any attorney for Manmohan Wig and Wig Properties, LLC, without prior consent of the Honorable Saundra Brown Armstrong." (Dkt 42-3 at 8.)

The Ninth Circuit recognizes "the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under appropriate

circumstances." De Long v. Hennessey, 912 F.2d 1144, 1146 (9th Cir. 1990). A request to declare a party a vexatious litigant entails consideration of four factors: (1) the party must have had adequate notice and an opportunity to oppose the order; (2) there must be an adequate record for review, including a list of all cases and motions that led the court to conclude that a vexatious litigant order was necessary; (3) the court must make a substantive finding as to the frivolous or harassing nature of the litigant's actions; and (4) the order must be narrowly tailored to fit the particular problem involved. Id. at 1147-48. "[P]re-filing orders are an extreme remedy that should rarely be used . . . because such sanctions can tread on a litigant's due process right of access to the courts." Id. "Nevertheless, '[f]lagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants.'" Moski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057 (9th Cir. 2007) (quoting DeLong, 912 F.3d at 1148).

There can be no legitimate dispute that Bhatia is an *abusive* litigant. The record in the various criminal and civil actions involving Bhatia is littered with his repeated and prolific motions and other requests in which he frivolously accuses the AUSA Corrigan and Agency Berry of engaging in a fraudulent conspiracy with Wig (among others) to prosecute him for swindling his family and others out of millions of dollars. Nonetheless, other than the instant case, Defendants were not parties to the other actions in which Bhatia submitted the offending filings. Defendants have cited no legal authority to support the conclusion that the Court may, or that it is appropriate to, impose a pre-filing order preventing Bhatia from submitting further filings against them, based on complaints and filings in other actions in which these defendants were not parties. C.f., Stone v. Maricopa County, 2008 WL 4446697 at *7 (D. Ariz. Sept. 8, 2008) (imposing vexatious litigant ordered based on plaintiff's "history of filing and re-filing the same claims against the *same defendants* involving the same two fact patterns") (emphasis added). In addition, Defendants' request that the vexatious litigant order apply to "any" civil action brought against them by Bhatia is not narrowly-tailored to prevent his abusive behavior. See De Long, 912 F.2d at 1147.

In light of the concerns expressed above, Defendants' motion for an order declaring Bhatia a vexatious litigant is denied.[7]

## IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1. Bhatia's request for leave to file a second supplemental declaration (Dkt. 58) and motion for leave to file a surreply (Dkt. 54) are GRANTED.

2. Defendants' motion for summary judgment (Dkt. 41) is GRANTED.

3. Plaintiff's motion for partial summary adjudication (Dkt. 16) is DENIED.

4. Defendants' motion for an order declaring Plaintiff a vexatious litigant (Dkt. 42) is DENIED.

5. Judgment shall be entered in favor of Defendants.

6. The Clerk shall close the file and terminate any pending matters.

7. No further motions or other requests may be filed with the Court unless specifically authorized by statute, the Federal Rule of Civil Procedure or the Court's Local Rules. Any further submissions shall be limited to ten pages. Any documents filed in contravention of this Order will be stricken.

IT IS SO ORDERED.

Dated: September 13, 2010

Saundra B. Armstrong
SAUNDRA BROWN ARMSTRONG
United States District Judge

---

[7] However, Bhatia is warned that he has no right to file frivolous and harassing lawsuits or motions, and that doing so violates Rule 11 of the Federal Rule of Civil Procedure. Rule 11 applies equally to attorneys and pro se litigants alike. Warren v. Guelker, 29 F.3d 1386, 1390 (9th Cir. 1994).

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

BHATIA et al,

Plaintiff,

v.

WIG et al,

Defendant.
_______________________________________/

Case Number: CV10-00072 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 14, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Lal Bhatia 97562-011
Federal Detention Center
5675 - 8th Street
Camp Parks
Dublin, CA 94568

Dated: September 14, 2010

Richard W. Wieking, Clerk

By: LISA R CLARK, Deputy Clerk